The Chief Justice
delivered the opinion of the court.*
On the 9th day of September, 1789, Mitchell and Johnston entered into a contract to exchange lands, whereby Mitchell agreed to make Johnston a good right, by deeds of general warranty, to 265 acres, on the South Fork of Elkhorn, and 1168 acres, at the Clay Lick and Stony Crossing, on the Kentucky, then surveyed but the plat not returned; in consideration of which, Johnston agreed to convey to Mitchell, by deeds of general warranty, 500 acres, one half of William Galloway’s pre-emption, on Sto-ner’s Fork of Licking, and one hundred and odd acres of Coons’ pre-emption, and also 200 acres near the head waters of the Big Bone Lick Creek: each party to make the deeds to the other, when demanded, allowing a reasonable time for the patent to be obtained for the 1168 acres; and it was agreed, as the 1168 acres were surveyed, that if it should be altered so as to injure it before it was returned, saidM itchell should allow' said Johnston for damages in the land Johnston conveyed to him.
In pursuance of this contract, Johnston conveyed to Mitchell 310 acress of Galloway’s and Coons’ pre-emptions, and Mitchell conveyed to Johnston a part of the tract of 265 acres on Elkhorn, and the balance being 150 acres, to *226 one Shannon, at the request and for the benefit of Jolito ston.
In this situation things remained until the year 1808, When Johnston filed his bill in chancery against Mitchell’s heirs, (he having theretofore departed this life,) in which, after stating the contract and its partial performance, as just mentioned, he alledged, in substance, that Mitchell failed to return th£ original survey of the 1168 acres, and caused a re-survey at a late period to be made, variant from the former and includingTand less valuable, and that the re-survey was made contrary to law and to location, and entirely covered by adverse elder grants; and he prayed, in substance, that the contract, so far as it had not been performed, might be rescinded, and that he might be restored to the possession of the land which he had not conveyed, and remunerated in damages for its deterioration, &c.
Mitchell’s heirs, in their answer, admitted the contract and its part performance as stated by Johnston, and that a re-survey had been made of tlye 1168 acres, but denied that it bad been made contrary to law or location, or that that the land included in it ivas of less value than that embraced by the original survey, and if it should be found to be so, alledged their willingness that Johnston should be compensated for tlie difference of value, according to the terms and intention of the contract; and they insist upo» their ability to convey tbe 1168 acres. They also filed their cross bill against Johnston, insisting, in substance, upon the same matters as they had done in their answer, and praying that the contract might be specifically carried into effect.
Johnston having died pending these suits, they were revived in the names of his heirs, and coming on to be beard, the circuit court decided, that Mitchell’s heirs should convey to Johnston’s heirs the 1168 acres, and make them compensation for the difference in the value of the land contained in the first and that contained in tbe second survey, and decreed that Johnston’s heirs should, after retaining what would be sufficient to make such compensation, convey the residue of tbe land, which Johnston bad contracted to convey, but had not conveyed. From that decree Johnston’s heirs have appealed to this court.
The first cpicstion which naturally occurs is, whether Mitchell's heirs have shewn themselves entitled to insist *227 upon a performance of the contract. The proof and exhibits demonstrate, beyond question, that the whole of the 1168 acrés, covenanted by Mitchel to be conveyed to Johnston, is covered by elder adverse grants, and there is no attempt to shew that the entry, upon which tne survey has been made, *is a valid one, so that Mitchell’s heirs do not appear to have any title either at law or in equity; and it is clear, therefore, that they cannot make a good right to the 1168 acres, as their ancestor bound hin-jielf to do. Now, as a general rule, it is indisputably settled, that where one party is unable to perform his part of the contract, he cannot be entitled to the performance of the contract by the other party. If, indeed, he has performed á valuable part of the contract, and his inability to perform the residue is produced without any default in him, his case might form an exception to the general rule. But in the present case it is evident, that the inability of Mitchell’s heirs to make a good title to the 1168- acres, is attributable, at least in part, to an inexcusable negligence on the part of their ancestor. For he was bound, not only from the nature of the transaction, but by the terms of the cpntract, to procure a patent for the 1168 acres in a reasonable time; but instead of doing so, he failed to make a re-survey until 1797, and did not procure the patent to issue until 1806, a period of about eighteen years from the date of the contract; and in the mean time, an elder grant had issued for a part of the same land, long after the lapse of what must be deemed q reasonable time for procuring his grant.
It is a general rule,that when one party cannot perform his part off. contract, he cannot coerce a performance by the other.
But there may be exceptions, as where the party asking relief, has performed a valuable part of his contract, and without his. fault is disa-abled from performing the residue: —Vide ante, Lee vs. Met-calle.
An entire contract partially executed, cannot be severed, it must be decreed in tota, or dissolved.
A total dissolution will be decreed in those cases only where the parties can be placed in statu gavthey weie before ,tbe bargain
*227 We feel ourselves bound to say, therefore, that Mitchell’s heirs have not shewn themselves entitled to insist upon a performance of the contract on the part of Johnston’s heirs.
The next enquiry is, whether the contract can be affirmed so far as it has been performed by the parties, and rescinded as to the residue, at the instance of Johnston or his heirs. That this cannot be done, we apprehend is perfectly clear. The contract is an entire one, and its entire performance or total recision, can only be decreed by a court of equity. But Johnston does not ask for a total re-cision of the contract, and indeed it is apparent that he would have no right to do so: for this could be done only upon his restoring, or offering to restore, Mitchell or his heirs in statu quo; and this could not be affected, inasmuch as Johnston took a conveyance to a third person, of a part pf the land which Mitchell was bound to convey.
This cannot be done where the interests of a stranger wiU be affected.
A contract execute*] i> pari, and the residue im-po.--sib'e tobe fulfilled, but involving the interests of a stranger,will neither be decreed or dissolv'd,but the parties will be left to their mutual remedies at law.
Bibb and Talbot for appellants, Maxdin for appellees.
We had, at first view, some doubt whether Johnston or his heirs might not be permitted to retain of the land conveyed, or to be conveyed by him, so much as would be equal' to the value of the 1168 acres under the stipulation in the contract, that if the survey should be altered so as to injure it before it was returned, Mitchell should allow Johnston damages in the land conveyed by him. Upon further reflection, however, we are inclined to think that this stipulation only provides for a compensation for any difference that might be in the land contained in the first and second survey. To extend it, therefore, to the case of a total inability to convey, especially as that does not appear to have been produced by the alteration of the survey so much as by the neglect to have had the re-survey made and carried into grant in a reasonable time, would be in effect to make a contract for the parlies, instead of decreeing the specific execution of a contract already made by them.
Upon the whole, therefore, we are of opinion that a court of equity cannot, under ail the circumstances of the case, decree either a performance or a rescisión of the contract, and that the parties ought to be left to their respective remedies at law.
The decree of the circuit court must be reversed with costs, and the cause be remanded, that the original and crosj bills may be dismissed, each party paying their own costs,

Absent, Judge Logaw.